[640 NYS2d 345]

In the Matter of LARRY F. WHITEHURST, Appellant, v MICHAEL KAVANAGH, as District Attorney of Ulster County, Respondent.

Third Department, April 4, 1996

APPEARANCES OF COUNSEL

*Susan Salomon,* Albany, for appellant.

*Michael Kavanagh, District Attorney* of Ulster County, Kingston *(Alan Lewis* of counsel), for respondent.

### OPINION OF THE COURT

WHITE, J.

During the afternoon of September 21, 1995, a seven-year-old girl (hereinafter the victim) was reported missing from the front yard of her home in the City of Kingston, Ulster County, and an intensive search for her ensued. Later that evening petitioner, who was not under arrest, was brought to the Kingston Police Department and questioned about the victim's disappearance. Although not in police custody, he was interrogated several other times during the next 48 hours. At approximately 11:00 P.M. on September 23, 1995 petitioner was taken into custody and charged with kidnapping in the first degree. He was questioned as to the whereabouts of the victim by, among others, an Assistant District Attorney of Ulster County from 10:00 P.M. on September 24, 1995 until approximately 1:00 A.M. on September 25, 1995, at which time petitioner and the Assistant District Attorney entered into a written "Cooperation Agreement".

This Cooperation Agreement provided, *inter alia*, that petitioner had indicated to the Kingston Police Department that he knew the location of the victim and that there was a possibility that she was still alive, and that in exchange for information as to the victim's whereabouts petitioner would plead guilty to kidnapping and no murder charges would be lodged against him. The agreement also set forth alternative minimum sentences which would be imposed depending upon whether the victim was found alive or dead, and further stated that if the victim was not found the agreement would be void. A handwritten addendum by petitioner indicated that he had the right to go to trial and, if he did so, the Cooperation Agreement would be void.

Later that day petitioner led authorities to the location of the victim, who was deceased. Thereafter, respondent announced that he did not consider himself bound by the Cooperation Agreement and that he intended to prosecute petitioner for murder in the first degree and seek the death penalty. Several days later, a felony complaint was filed charging petitioner with murder in the second degree. Subsequently, petitioner brought this proceeding to prohibit respondent from prosecuting him for murder in the first degree or second degree as a result of the death of the victim. In November 1995, a Grand Jury returned an indictment charging petitioner with, *inter alia,* murder in the first degree and second degree in connection with the victim's death.

As District Attorney, respondent is a constitutional officer and has the duty and responsibility to conduct all prosecutions of crimes and offenses cognizable by the courts of Ulster County, and has broad discretion in determining when and in what manner to perform his duties (*see,* NY Const, art XIII, § 13; County Law § 700 [1]; *see also, Matter of Holtzman v Goldman,* 71 NY2d 564, 573). Although prohibition is customarily used to control or inhibit courts or a Judge threatening to act without jurisdiction, a prosecutor may be subject to this writ (*see, Matter of Vega v Bell,* 47 NY2d 543, 547; *Matter of Dondi v Jones,* 40 NY2d 8, 13). However, prohibition is an extraordinary remedy which lies only where there is a clear legal right, and then only when an officer threatens to act in a matter over which he or she has no power over the subject matter or where he or she exceeds authorized powers in a proceeding over which he or she has jurisdiction. Moreover, even if there has been excessive use of authorized power, the extraordinary remedy of prohibition will not lie if there is an available remedy at law (*see, Matter of State of New York v King,* 36 NY2d 59, 62; *Matter of Carney v Feldstein,* 193 AD2d 1016, 1017; *see also,* CPLR 7801 [1]). Additionally, prohibition is left to the sound discretion of the court, which must consider not only the gravity and harm which would be caused, but also whether the matter can be adequately corrected on appeal or by the normal proceedings at law or equity (*see, Matter of Morgenthau v Erlbaum,* 59 NY2d 143, 147, *cert denied* 464 US 993; *La Rocca v Lane,* 37 NY2d 575, 579, *cert denied* 424 US 968).

Here, the alleged crimes fall squarely within the jurisdiction of respondent and petitioner has yet to exhaust his statutory remedies by moving against the indictment (*see,* CPL 210.20; *La Rocca v Lane, supra; Matter of Carney v Leary,* 106 AD2d

176, 179). In addition, the ordeal of a criminal trial with the possibility of conviction, standing alone, is not sufficiently harmful to warrant the use of prohibition even if the harm sought to be redressed implicates a constitutional right (*see, Matter of Lipari v Owens*, 70 NY2d 731, 733; *Matter of Rush v Mordue*, 68 NY2d 348, 354), nor is this remedy generally available to collaterally review an arguable error of law committed in a pending criminal action (*see, Matter of Jacobs v Altman*, 69 NY2d 733, 735).

Given the jurisdiction of respondent, the remedies available to petitioner during the normal course of the pending action and, in particular, the extraordinary nature of the remedy requested, we cannot say that the court improperly exercised its discretion. We therefore affirm Supreme Court's dismissal of this petition and its order denying reconsideration.

CARDONA, P. J., CREW III, YESAWICH JR. and SPAIN, JJ., concur.

Ordered that the judgment and order are affirmed, without costs.